**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Civil Action No.**

| | |
|---|---|
| **CAROLINA THOMAS,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *v.* ) | **Jury Trial Demanded** |
| ) | |
| **TYCO INTERNATIONAL PLC,   and** ) | |
| **TYCO INTERNATIONAL MANAGEMENT** ) | |
| **COMPANY, LLC and** ) | |
| ) | |
| *Defendants* ) | |
| ) | |

**COMPLAINT**

Plaintiff, CAROLINA THOMAS, by and through her undersigned attorneys, files this lawsuit against TYCO INTERNATIONAL PLC ("TI") and TYCO INTERNATIONAL MANAGEMENT COMPANY, LLC ("TIMC"), (collectively referred to as "TYCO"), and as grounds therefore alleges as follows:

**NATURE OF THE COMPLAINT**

1.      This is an action under federal and Florida law to protect a whistleblower who suffered retaliation from her former employer, ending her employment and damaging her professional reputation.  Plaintiff is an accountant who worked for a global company as a financial reporting manager.  She reported systemic failures in financial workflow that jeopardized controls placed on the company's business under the nation's securities laws and that, in Plaintiff's reasonable belief, violated the securities laws.  She also objected to and reported the falsified credentials of unqualified accounting personnel who had reporting

responsibility for billions of dollars of revenue.  Plaintiff reasonably believed that Tyco's employment of the fake "CPA" violated the controls provisions of the corporate compliance law and posed a significant risk of loss to shareholders. Plaintiff complained internally to the Tyco ombudsman, and then to the Department of Labor, and the Securities and Exchange Commission.  In retaliation against her for the whistleblowing activity, Tyco fired Plaintiff, using as a pretext that she used impermissible means to expose the false credentials of the "CPA," which she did not.

**JURISDICTION AND VENUE**

2.      The court has jurisdiction over this matter pursuant to 18 U.S.C. § 1514A(b), 15 U.S.C. § 78u.6(h)(1)(B), 28 U.S.C. § 1331, 1337, 1367, and Fla. Stat. § 448.103(1)-(3).  Venue is proper in this district under 28 U.S.C. § 1391 and Fla. Stat. § 448.103(c).

**THE PARTIES**

3.      Plaintiff Carolina Thomas is a citizen of Florida and a resident of Coral Springs, Broward County.  She holds a bachelor's degree in accounting and management information systems from Florida Atlantic University, and has worked in accounting, financial analysis, and financial reporting management since her graduation from the University in 2002. From 2005 until May 14, 2014, Plaintiff worked for Tyco or one of its subsidiaries in various accounting capacities.  From 2010 until May 14, 2014, Plaintiff worked as a Financial Reporting Manager for Tyco's North America Controllership, managing and supporting tasks regarding the centralization of Tyco's financial reporting operations in North America.  She received favorable performance reviews and regularly received performance bonuses in her career at Tyco.  She is fluent in German, Spanish, and English.

4.      Defendant Tyco International plc (TI), organized under the laws of Ireland and headquartered in Mahon, County Cork, Ireland, owns property in, and does substantial business

in this state and in this district.  Tyco International is a global business, with over $10.0 billion in annual revenues, providing security products and services, fire detection and suppression products and services, and life safety products.   Tyco's brands have included Tyco, SimplexGrinnell, Sensormatic, Wormald, Ansul, Simplex, Scott, and ADT.

5.       Defendant Tyco International Management Company, LLC (TIMC) is a wholly-owned subsidiary of Tyco International plc and is based in Princeton NJ.

6.       During the times relevant to this complaint, TI, or its predecessor company, Tyco International Ltd., has operated a service segment based in Boca Raton, Florida called the North American Controllership, which deals with all of Tyco's internal accounting and financial reporting systems in North America.  Plaintiff worked in this division from 2010 to May 14, 2014.

7.       Plaintiff received an offer of employment dated June 29, 2007 from Tyco Fire and Security, a subsidiary of Tyco.

8.       Tyco International Ltd. was engaged in the following employment actions relating to Plaintiff:

a.       It was a party to the Confidentiality and New Inventions Agreement applicable to Plaintiff.

b.       It provided her an email domain of tycoint.com ;

c.       It provided a business card affiliating her with Tyco International.

9.       TIMC and TI, , formerly Tyco International Ltd., are independent legal entities but share the control of employment matters including:  hiring and firing of employees, work rules, assignments, conditions of employment, day-to-day supervision and discipline, and control

of employee records and policies.  The policies and practices at issue in this litigation emanated from TI or its predecessor.

## ADDITIONAL FACTUAL ALLEGATIONS

10.     In the summer of 2013, Plaintiff reported to Janine Albano, Director of Financial Reporting North America, through Terri Lippman, Senior Manager of Financial Reporting North America.  Plaintiff received a positive mid-year performance review and earned an above-average merit increase to salary.  Albano and Lippman shared with Plaintiff the new organizational structure for the North America Reporting team, and told Plaintiff that she was slated for increased financial reporting management responsibilities for Tyco's life safety and security business lines, with revenue of approximately $4.0 billion per year, as well as responsibility for financial reporting management of the Latin American ledgers.  Tyco proposed a new Manager position for Plaintiff to go along with these duties.

### Hiring of Alida Garcia

11.     In August 2013, the new Manager position was posted externally, before internal posting.  Plaintiff sent an email to Albano for clarification and expressed her desire to apply for the new position.  Albano replied that there was no need for Plaintiff to apply because it was her same position.  Lippman told Plaintiff not to apply for the position or she would make a fool of herself applying to her same position.  Plaintiff remained interested in applying, but could no longer find the external posting.  Lippman explained that it was posted externally for one day to allow a Tyco contractor, Alida Garcia, the opportunity to apply.  The next day the posting was on the Tyco intranet, but Lippman again discouraged Plaintiff from applying, saying that she would make a fool out of herself.

12.     On September 26, 2013, Plaintiff met with Albano, Lippman, and Ozlem Fonda of Human Resources to discuss the position.  Plaintiff complained and otherwise objected to the fact that Garcia had obtained the job using false credentials.  Garcia represented herself as a certified public accountant (CPA), and Tyco used that title in business communications about Garcia, but she was not a CPA.  A Tyco employee reported to Plaintiff that Garcia acknowledged that she was not a CPA, but had placed the CPA designation on her resume to get job interviews.  Another Tyco employee, who had been Garcia's boss at a previous job at PepsiCo, told Plaintiff about the inconsistencies in Garcia's credentials.  Garcia also posed herself as having a master's degree (called maestrìa) from a University in her home country of Colombia.  She did not have that degree, but rather only a certification.  In the resume Garcia presented to Tyco for her initial hiring as a contractor, she misrepresented both that she was a CPA and had a master's degree.  In the September 26, 2013 meeting, Plaintiff also presented materials from the American Institute of Certified Public Accountants and the Florida Board of Accountancy Policy indicating Garcia's improper use of the CPA title.

13.     Notwithstanding all the information presented by Plaintiff regarding Garcia's lack of credentials, that same day the Tyco managers told Plaintiff that they had placed telephone calls to the foreign universities that Garcia had attended and that nothing improper was found with Garcia's title or credentials.  Shortly thereafter, on or about October 1, 2013, Tyco hired Garcia for the new manager's position.  Plaintiff almost immediately suffered retaliation for opposing Garcia's employment.  On November 21, 2013, Albano and Lippman presented Plaintiff her performance review containing negative comments for the first time in her long career with the Tyco companies.  Later that month, Plaintiff received a bonus payout less than most of her peers, another unprecedented action.

**Sham Proceeding**

14.     Tyco engaged in a sham public proceeding in an attempt to uphold the false credentials of Garcia.  On March 3, 2014, Plaintiff complained to the Florida Department of Business Regulation (FDBR) about Garcia's improper use of the CPA title. Upon the complaint of Plaintiff, the FDBR looked into the qualifications of Garcia.  Tyco's outside legal representative, Kevin Zwetsch, made misrepresentations to the FDBR to induce the state to believe that Garcia was appropriately accredited to allow her to refer to herself as a CPA. Zwetsch told the Florida regulators that Garcia was indeed a Certified Public Accountant from Colombia, and that she should be able to use the title in the United States as long as she disclosed that it was granted in Colombia.  Tyco's representation through Zwetsch was knowingly false, and made a sham of the Florida proceeding.

15.     On or about March 2, 2014 Plaintiff Thomas also filed a complaint online with the U.S. Department of Labor's Occupational Safety and Health Administration (OSHA). Zwetsch feigned ignorance in telling the DOL OSHA investigator that it was his own poor translation from the Spanish that caused the confusion about Garcia's credentials.  He admitted that Garcia did not hold the title Contador Publico Certificado, which does not exist in Colombia. However, Zwetsch compounded the misrepresentation by asserting that Garcia held the title Contador Publico Profesional, and that title should be deemed the equivalent of CPA.  However, that title does not exist in Colombia, either, and Zwetsch knew it when trying to convince the regulators to the contrary.

16.     Tyco and Zwetsch knew that what Garcia possessed in fact was a tarjeta profesional, or professional card, required for all professional graduates in Colombia in order to

be employed. Garcia's card states that it is a "tarjeta profesional de contador publico," and does not indicate that she holds a CPA or equivalent title.

## Pattern of False or Misleading Credentials

17. Tyco's sponsorship of Garcia despite her use of false professional credentials is not an isolated practice of Tyco's. Rather, it appears to be a part of a pattern of Tyco's dereliction of its duties as a publicly traded company in this regard. Tyco has employed numerous accountants in Florida who have held themselves out to be CPAs, and either were not CPAs, or were not certified in Florida and did not disclose their out-of-state licensure. For example, Christopher Folsom, Tyco's Senior Director of Accounting for North America, up until 2015 led a team of over 150 accountants in Florida responsible for the accuracy and integrity of the Financial Statements for North America. Folsom listed himself as a CPA in his LinkedIn profile, and signed as a CPA in his Tyco emails, but he was not a licensed CPA in Florida, and did not disclose his out-of-state licensure.

18. As another example, after Plaintiff exposed Garcia's false credentials, Tyco attempted to bootstrap its defense of Garcia by claiming that its Controller in Colombia also had the CPA-equivalent title, and that he had a certification in GAAP accounting, which is used only in the United States. Both of these contentions are false. The Controller's University in Colombia did not offer any courses on GAAP, and did not grant a CPA title.

19. The practice of presenting false or misleading credentials reached the highest levels of the corporation. Osama "Sam" Eldessouky is Tyco's Chief Accounting Officer (CAO). Until September 2012, Tyco's SEC filings referred to Eldesssouky as a certified public accountant. Shortly after that, Eldessouky's CPA license expired, or became delinquent or inactive. The delinquent classification in California means that Eldessouky's license there was

not renewed by its expiration date and expired, and that he does not have authority to practice public accountancy. He continues to be Tyco's CAO and Tyco's financial expert presenting its earnings reports and financial results to the SEC, but current filings do not disclose that his CPA license expired, or became delinquent or inactive.

## Plaintiff's Reasonable Belief

20. Plaintiff reasonably believed, on an objective and subjective basis, that Tyco's employment of Garcia violated the controls provisions in section 404 of the Sarbanes-Oxley Act of 2002 (SOX). Garcia was untrained in generally accepted accounting principles (GAAP) used in the United States, never validated her foreign degree to obtain that knowledge, and was unqualified to be a financial reporting manager in charge of reporting $4.0 billion per year to Tyco financial headquarters in Princeton, New Jersey and ultimately to the SEC. Plaintiff reasonably believed that the presence of Garcia in her position threatened a significant risk of loss to shareholders due to her false credentials and lack of qualifications.

## Financial Workflow System

21. In the fall of 2013, Plaintiff reported to her immediate superiors irregularities in the Tyco financial workflow system that she reasonably believed, on an objective and subjective basis, violated the financial controls provisions of SOX § 404. Plaintiff believed that the irregularities also resulted in faulty financial data being reported to the SEC, since the system was manipulated and not reliable to guarantee that the data submitted to the SEC were in fact the financial data in the North American ledger systems. According to Plaintiff's belief, the irregularities also constituted a violation of SEC Rule 21F.

22. Plaintiff reported an accounting system deficiency that involves submission and approval of the monthly tie-outs between the Tyco North America General ledger ERP systems

and the financial data reported to the SEC for the Tyco North American entities using the HFM financial reporting consolidation tool. The tie-out process is to ensure that the financial data reported to the SEC agrees with the ERP systems, which should be the case since the Financial Reporting process is only an extension of the actual financial data in the ERP systems.

23.     This process was changed by the Financial Reporting Director to use Sharepoint workflows to facilitate submission, approval and the actual tie-out file. The new process did not comply with segregation of duties and there were IT functions that someone in the Reporting team performs. This person is the same one that developed the system. There was no formal process to make changes to already existing workflows in the form of e-mail approval to support any changes, cancellations or deletions. The review performed by the manager who had been using the new process was not a proper review that would detect any manipulations to the data.

24.     In addition, the file used for the actual tie-out had a lot of manual manipulation and was not protected for any improper inputs, intentional or unintentional. Furthermore, the versioning history of the tool does not capture manual changes done to reported numbers in that file. During the forensic investigation, IT personnel discovered that this system, even though it was implemented since the end of previous fiscal year, had never been deployed to the production environment. Furthermore, the audit trail history was subject to system limitations since when the tool was developed there was no involvement of IT or compliance personnel to make sure that all compliance potential issues were properly addressed.

25.     The cumulative potential effect is that there could be financial misstatements of SEC filings and failure to comply with internal audit requirements. When Plaintiff's team was required to start using the new process and the new file which alters general ledger extracts through Monarch, they conducted some testing. The results found the current process

insufficient to attest the data integrity between ERP's and HFM reported data.  Plaintiff provided the results of this testing to internal audit and forensic accounting.

26.     The Tyco attorney assigned to the matter, Mason Hurst, thanked Plaintiff for her report.  However, Hurst reacted in a strong negative manner when he learned that Plaintiff had also reported the matter to the DOL and engaged Tyco's compliance, internal audit, and forensic accounting teams in an internal investigation.

27.     After Tyco's forensic accounting team came from Europe and the Information Technology Department (IT) got involved, Albano was ordered to discontinue using the system to tie out the financials reported to the SEC for North America, and to keep paper copies and hand signatures with all the approvals.  She was also ordered to engage IT in any type of systems implementations or workflows of that nature.

### Ombudsman Complaint

28.     As an outgrowth of SOX, Tyco adopted a "code of ethics," called the Guide to Ethical Conduct, applicable to all employees.  Also, Tyco created an ombudsman office in response to the requirement that publicly traded companies establish independent processes for the confidential receipt and handling of complaints relating to financial and accounting irregularities. The code of ethics provided protection against retaliation for reporting to the ombudsman.

29.     On December 2, 2013, Plaintiff opened an ombudsman case against Albano regarding the matters described above.  Two other Tyco employees, Gael Barney and Erin Lutz, also opened cases with the ombudsman office to report financial and accounting violations. Despite the cloak of confidentiality that is supposed to surround these proceedings, before the end of 2013 Albano stated publicly and in emails that she knew about the cases.  Albano

immediately engaged in additional retaliation against Plaintiff by assigning to Garcia Plaintiff's reporting responsibilities for three of Tyco's safety product companies.

## OSHA Complaint

30.     On February 26, 2014, Plaintiff filed a telephonic whistleblower complaint under SOX with the OSHA, and completed the complaint online on March 2, 2014.   Plaintiff complained about the financial workflow system issues, the threat to the integrity of Tyco's financial management through the employment of Garcia with her lack of credentials and qualifications, the compromise to the internal investigation due to the breach of confidentiality, and the other retaliatory personnel actions taken against her by Albano and Lippman for engaging in protected activity.

31.     After more than 180 days of preliminary investigative activity, extensive but unsuccessful efforts by OSHA to settle the matter with Tyco, and no final decision by the Secretary of Labor, at Plaintiff's request, OSHA administratively dismissed her complaint so that she could pursue the matter in this action.

## NLRB Complaint

32.     On July 23, 2014, amended August 14, 2014 and November 21, 2014, Plaintiff brought a charge against Tyco with the National Labor Relations Board (NLRB), claiming a violation of the National Labor Relations Act (NLRA).  Plaintiff complained about Tyco's rule prohibiting employees from discussing their wages, performance reviews, qualifications, and other working conditions with others, and making such disclosures subject to discipline up to and including termination.  Specifically, Plaintiff complained about provisions of Tyco's Code of Ethics prohibiting such communications, and Tyco's related policy enforcing employee confidentiality during all internal workplace investigations.

33.     On March 19, 2015, the NLRB entered into a settlement of the above cases with Tyco.   Under the terms of the settlement, Tyco was required to rescind certain policies, electronically post notice of the settlement to employees, and physically post notices of the settlement at its 330 locations nationwide.   Specifically, Tyco was required to rescind or revise portions of its Confidentiality and New Inventions Agreement that would preclude employees from using or disclosing information regarding employees' files, compensation, skills, performance and qualifications.   Tyco also was required to rescind or revise provisions of its code of ethics (Guide to Ethical Conduct) regarding the privacy and data of employees.

34.     The NLRB settlement confirmed that Tyco's reliance on the employee file privacy provisions of its code of ethics in terminating Plaintiff's employment was an unlawful, illegitimate, and pretextual action.   Putting aside for a moment that Plaintiff did not access employee records in her complaint about Garcia's lack of credentials, even if that information resided solely in Garcia's employee file, Plaintiff was permitted and entitled to use it as a whistleblower, reporting to OSHA and NLRB what she reasonably believed was a violation of the nation's securities laws and regulations.

**SEC Complaint**

35.     When Plaintiff filed her claim with OSHA in March 2014, the DOL investigator notified the SEC.   Thereafter, Plaintiff communicated almost daily with an SEC investigator until the time of her termination from employment on May 14, 2014.

36.     On March 28, 2014, the SEC's Division of Enforcement acknowledged receipt of Plaintiff's OSHA complaint and asked for additional information in light of the securities laws implications of the complaint.   Over the next month and a half, Plaintiff provided the SEC the details of her complaint, particularly regarding the financial workflow issues, and Plaintiff filled

out the SEC's questionnaire for complaints under SOX and Dodd-Frank. The SEC staff was considering Plaintiff's claims at the time she was terminated from Tyco's employment on May 14, 2014.

## Plaintiff's Termination From Tyco's Employment

37. On May 14, 2014, Tyco terminated Plaintiff's employment for accessing the records of another employee, without specifying the records. Later, Tyco examined Plaintiff's impounded laptop computer and found two documents that it contended were Tyco records. The first was the confirmation, dated February 11, 2014, that Plaintiff had received from Icesi University in Colombia, stating that Garcia had completed the coursework for the title Especialista en Finanzas concentracìon en Finanzas Avanzadas in 1995. The certificate contained no reference to the CPA title or anything like it, and it contained no reference to a master's degree. The second was a confirmation dated April 3, 2014 from Libre University in Colombia, stating that Garcia had received a degree in accounting in 1990. The certificate made no reference to a CPA title or anything like it.

38. The reasons stated for Plaintiff's termination were an unlawful pretext, on at least three grounds. First, Plaintiff obtained the information concerning Garcia's academic record in Colombia through open and honest means, not contrary to any legitimate policy adopted by Tyco. Plaintiff made telephonic contact with the Garcia's Colombian universities inquiring about Garcia's credentials, then asked if Garcia's academic certificates could be sent to her by email, which they were.

39. Second, to the extent that Tyco terminated Plaintiff in reliance upon provisions of its code of ethics regarding the privacy of employee information, that reliance was unlawful for

the same reasons that Tyco was required to rescind or revise those provisions in its settlement of Plaintiff's complaint with the NLRB, and because those provisions violated SEC Rule 21F.

40.     Third, Tyco abrogated its own obligation to verify, from source documents, the true status of Garcia's qualifications and credentials to manage billions of dollars of financial reporting in a publicly traded company, and to see if Garcia had the required credibility and integrity to carry out the duties of her position.  Instead of doing the type of investigation conducted by Plaintiff and relying on objective results, Tyco recklessly and willfully glossed over the matter by relying on the say-so of Garcia and her sister.

41.     The real reason that Tyco terminated Plaintiff was in retaliation for her whistleblowing actions.  Those included her reasonable belief that Tyco's employment of Garcia and others with false credentials, and Tyco's operation of its financial workflow system, violated Tyco's duties under SOX Section 404 and SEC Rule 21F.

### Economic Damages

42.     As a result of the actions of Tyco alleged here, Plaintiff suffered injury in the form of monetary damages.  Plaintiff lost pay, including bonuses, and benefits, and the expectation of increased pay and benefits in the future.

### Non-Economic Damages

43.     As a result of the actions of Tyco alleged here, Plaintiff experienced emotional distress, pain and suffering, physical sickness and injury, humiliation, embarrassment, indignity, and harm to her professional reputation.  As a result of the actions of Tyco alleged here, Plaintiff experienced sleeplessness, anxiety, edema, heart palpitations, severe headaches, and severe chest pains, so severe that Plaintiff was hospitalized twice.

44.     Tyco's actions against Plaintiff causing her injury were intentional, willful, reckless, and outrageous.

## COUNT I

### FLORIDA WHISTLEBLOWER ACT,
**Fla. Stat. §§ 448.101-448.105 (2015)**

45.     Plaintiff realleges and incorporates Paragraphs 1-44 above as if set forth fully herein.

46.     The actions of Tyco alleged here violate the provisions of Florida law commonly referred to as the Florida Whistleblower Act, Fla. Stat. §§ 448.101-448.105 (2015).  Tyco by its actions alleged here engaged in one or more retaliatory adverse personnel actions against Plaintiff for engaging in activities protected by § 448.102(1)-(3), leading up to and including Plaintiff's termination from Tyco's employment.

47.     As alleged herein, Plaintiff, in addition to complaining to various governmental agencies about Tyco's actions, in compliance with § 448.103(c) complained, orally and in writing, to her Tyco supervisors and to Tyco management, including Tyco's ombudsman, about Tyco's activities, policies, and practices challenged herein, and afforded Tyco a reasonable opportunity to correct those challenged activities, policies, and practices.

## COUNT II

### SARBANES-OXLEY ACT OF 2002, SECTION 806,
**18 U.S.C. § 1514A**

48.     Plaintiff realleges and incorporates Paragraphs 1-47 above as if set forth fully herein.

49.     The actions of Tyco alleged here violate the whistleblower protection provisions of federal law commonly referred to as the Sarbanes-Oxley Act of 2002 (SOX), § 806, 18 U.S.C.

§ 1514A. . Tyco by its actions alleged here engaged in one or more retaliatory personnel actions against Plaintiff for engaging in activities protected by § 18 U.S.C. § 1514A. Plaintiff reasonably believed that the information she provided to federal agencies concerning the actions of Tyco alleged here violated one or more provisions of federal law relating to fraud against shareholders, including but not limited to SOX § 404 and SEC Rule 21F.

**COUNT III**

**DODD-FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT, SECTION 922, 15 U.S.C. § 78u-6(h)(1)(A) (2010).**

50.     Plaintiff realleges and incorporates Paragraphs 1-49 above as if set forth fully herein.

51.     The actions of Tyco alleged here violate the whistleblower protection provisions of Section 922 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h)(1)(A) (2010). Tyco by its actions alleged here engaged in one or more retaliatory personnel actions against Plaintiff for engaging in activities protected by 15 U.S.C. § 78u-6(h)(1)(A) (2010). Plaintiff reasonably believed that the information she provided to federal agencies concerning the actions of Tyco alleged here violated one or more provisions of federal law relating to fraud against shareholders, including but not limited to SOX § 404 and SEC Rule 21F.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Carolina Thomas respectfully prays that the Court:

A.  Declare that Tyco has violated the provisions of Florida and federal law as pleaded here;

B.  Enjoin Tyco from further violations of Florida and federal law as pleaded here;

C.  Reinstate Plaintiff to her employment, without loss of pay (including bonuses), employee benefits, service, or promotion opportunity;

D.  Award Plaintiff back pay in the amount she would have earned but for Tyco's termination of her employment, including bonuses and increases and full restoration and accrual of employee benefits, plus interest accruing from the date of termination to the date of judgment;

E.  Award Plaintiff an equal additional amount of back pay, pursuant to 15 U.S.C. § 78u-6(h)(1)(C)(ii);

F.  Award Plaintiff any other compensatory damages allowed by law, pursuant to Fla. Stat. §§ 448.103(2)(e);

G.  Award Plaintiff punitive damages;

H.  Award Plaintiff her attorney's fees, costs, and expenses of suit; and

I.  Award Plaintiff any other relief that is just, fitting, and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: April 1, 2016        SCOTT WAGNER & ASSOCIATES, P.A.
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile: (561) 653-0020

s/Cathleen Scott
Cathleen Scott, Esq.
Florida Bar No. 135331
Primary e-mail: CScott@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
Secondary Address: 101 Northpoint Parkway
West Palm Beach, FL 33407
www.ScottWagnerLaw.com

Raymond C. Fay, Esq.
Email: rfay@faylawdc.com
FAY LAW GROUP PLLC
1250 Connecticut Avenue NW
Suite 200
Washington, DC 20036
Telephone: (202) 263-4604
Facsimile: (202) 261-3508
www.faylawdc.com
(*pro hac vice* application pending|)